UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHEN KNOWLES Trustee of the Bricklayers of Indiana Retirement Fund, BRICKLAYERS AND TROWEL TRADES INTERNATIONAL PENSION FUND, BRICKLAYERS AND ALLIED CRAFTWORKERS INTERNATIONAL HEALTH FUND other AS SUCCESSOR TO BRICKLAYERS OF INDIANA HEALTH AND WELFARE FUND, INDIANA BRICKLAYERS LOCAL 4 JOINT APPRENTICESHIP TRAINING COMMITTEE, LOUISVILLE PENSION FUND, BRICKLAYERS LOCAL 4 IN/KY, INDIANAPOLIS PENSION FUND, Plaintiffs, v. DODDS MASONRY CONSTRUCTON COMPANY, INC., DK & L MASONRY, LLC, D AND K MASONRY, LLC, Defendants. | No. 1:19-cv-00443-SEB-MPB |

**ORDER ON DEFENDANT'S MOTION TO DISMISS (ECF No. 15)**

Plaintiff Stephen Knowles ("the Trustee"), in his capacity as the trustee of certain pension funds ("the Funds") of the International Union of Bricklayers and Allied Craftworkers Local No. 4 of Indiana and Kentucky and its affiliated locals ("the Union"), sued Defendants Dodds Masonry Construction Company, Inc. ("DMCC"), DK&L Masonry, LLC ("DK&L"), and D and K Masonry, LLC ("D&K"), under the Employee Retirement Income Security Act of 1974 (ERISA), *see* 29 U.S.C. § 1132, for Defendants'

1

failure to contribute to the Funds according to the terms of a collective bargaining agreement (CBA) with the Union.

Now before the Court is a motion to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), filed only by DK&L. (The Trustee has represented to the Court that he has agreed to dismiss the remaining Defendants.) For the reasons given below, the motion is denied.

## **Background**

The complaint, together with the instrument attached to it, *see* Fed. R. Civ. P 10(c), alleges as follows. DMCC is an Indiana corporation engaged in the masonry and construction business, Am. Compl. ¶ 4(a), ECF No. 13, which employs or has employed members of the Union, a regional bricklayers union. *Id.* ¶ 5. As a result of prior collective bargaining agreements, the Union has established the Funds, a collection of pension funds benefitting Union members. *Id.* ¶ 3(b). Beginning on July 30, 1998, DMCC "entered into successive collective bargaining agreements with the Union" which required DMCC to contribute to the Funds for the benefit of "certain of its employees[,]" presumably Union members. *Id.* ¶ 5.

The Trustee has attached to the complaint a "Memorandum of Agreement" ("the Memorandum") dated July 30, 1998. Am. Compl. Ex. A, ECF No. 13-1. The Memorandum was executed between DMCC as "Employer" and the Union. *Id.* at 2. "In consideration of the mutual promises of each other [*sic*]," both parties adopted the latest version of an agreement "between the Union and the Indiana Mason Contractors Statewide Association, Inc.," and "agree[d] to be bound by all of the terms and conditions

2

thereof for the duration of such Agreement." *Id*. Further, "[t]he parties agree[d] to be bound by the terms and conditions of any Trust Fund Agreements" contained in the agreement referred to. *Id*. The Memorandum was signed by James Dodds on behalf of DMCC, and by a representative for the Union. *Id*.

In 2008, the Trustee sued DMCC to recover unpaid pension benefits, Am. Compl. ¶¶ 8, 13, and obtained a judgment "in excess of $26,000" against DMCC. *Id*. ¶ 8. Subsequently, DMCC went out of business. *Id*. After DMCC went out of business, James Dodds set up two new companies, Dodds of Indiana ("Dodds IN") and Dodds of Kentucky ("Dodds KY"). *Id*. ¶ 9. In 2011, the Trustee again filed suit, this time against Dodds KY, *id*. ¶ 10, presumably again seeking to recover pension benefits that remained unpaid. Dodds KY then declared bankruptcy. *Id*. ¶ 11. At some point following the suit against DMCC, James Dodds created DK&L. *See Id*. ¶ 12.

In the present action, the Trustee has once again sued to recover benefits that remain unpaid from DMCC, D&K, and DK&L. *Id*. ¶ 13. The three companies share several common aspects. For one, James Dodds plays a prominent role in all three. Not only does DMCC bear his name, *id*. ¶ 4(a), but he either controls or once controlled the labor relations policy of all three. *Id*. ¶ 7(a). The companies also share common management, *id*. ¶ 7(c), and common ownership. *Id*. ¶ 7(d). Finally, D&K and DK&L "share common employees, equipment, materials, and jobs" which had been or are currently used by DMCC. *Id*. at ¶ 7(b).

Now before the Court is Defendant DK&L's motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 15.

3

## Standard of Decision

"A pleading that states a claim to relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). In order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the complaint must "contain[] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *West Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).

When considering the plausibility of the complaint, all well-pleaded facts are taken as true, though legal conclusions are not. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). The complaint is "construe[d] . . . in the light most favorable to [the plaintiff]," and "all reasonable inferences" are drawn in his favor. *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 504 (7th Cir. 2013) (citing *Iqbal*, 556 U.S. at 678). The facts are considered on the basis of whether they plausibly state a claim to relief that rises beyond a merely speculative level. *McCauley*, 671 F.3d at 616. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

What constitutes a plausible claim depends on context, requiring the Court to apply its experience and common sense. *McCauley*, 671 F.3d at 616 (citing *Iqbal*, 556 U.S. at 679). At a minimum, however, plaintiffs are required to support their complaint with "'some specific facts.'" *Id.* (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.

4

2009)). How much specificity is required may vary from case to case, but "'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together.'" *Id.* (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)).

## Analysis

In a four-page filing containing not a single citation to any legal authority, DK&L contends that (1) the Trustee has not sufficiently alleged the existence of a contract between the Union and DCCM, and, (2) even if such a contract exists, DK&L cannot be held liable for DCCM's obligations under it. For the reasons stated below, neither argument prevails.

**I.  The Trustee has plausibly alleged the existence of a contract between the Union and DMCC.**

DK&L contends that the Trustee has failed to plead the existence of a contract between the Union and DMCC, citing the instrument attached to the complaint as not constituting an enforceable agreement because it is merely a memorandum of agreement. This contention is meritless. First, the Trustee was under no legal obligation to attach the instrument on which this lawsuit is based. Federal Rule of Civil Procedure 10(c) provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).  However, that rule is "permissive" and "[a] plaintiff is under no obligation to attach her complaint documents upon which her action is based." *Venture Ass'n Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (citing *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991)).

Second, and perhaps more to the point, it is not at all clear why DK&L believes the instrument attached to the complaint is not an enforceable agreement. DCCM acting by and through James Dodds along with the Union both signed the Memorandum and agreed to its various provisions "[i]n consideration of the mutual promises of each other." Am. Compl. Ex. A, at 2. "'[O]ffer, acceptance, consideration, and a meeting of the minds'" are all that is required to form a binding contract. *Perrill v. Perrill*, —— N.E.2d——, No. 18A-DN-1616, 2019 WL 2262746, at *4 (Ind. Ct. App. 2019) (quoting *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016)). All of those elements plausibly appear on the face of the attached Memorandum.

Defendant's additional argument—that, following the conclusion of DMCC's existence, DMCC was no longer bound by any agreement it might have entered into with the Union—is similarly without merit. The Memorandum explicitly states that the parties will be bound "for the duration of [the] Agreement," including any subsequent extensions or amendments. Am. Compl. Ex. A ¶ 3. Clearly, the Agreement contemplated continuing obligations beyond the time period during which the parties remained in business.

**II.     The Trustee has plausibly alleged DK&L is liable for DMCC's obligations under an alter ego theory.**

ERISA imposes an obligation on "[e]very employer who is obligated to make contributions to a multiemployer [pension] plan . . . under the terms of a [CBA]" to "make such contribution in accordance with the terms and conditions of . . . such [CBA]." 29 U.S.C. § 1145. Ordinarily, a successor employer is not bound by a CBA negotiated between its predecessor and its predecessor's employees. *Boland v. Thermal*

6

*Specialties, Inc.*, 950 F. Supp. 2d 146, 151 (D.D.C. 2013). This rule has been found to be unfairly exploited, however, when a company goes out of business only to reappear as virtually the same entity but unburdened by the CBA. *Id.* at 152. The "alter ego" doctrine prevents corporations from avoiding these obligations by going out of business and reincorporating in the form of sham entities. *Flynn v. Interior Finishes, Inc.*, 425 F. Supp. 2d 38, 51 (D.D.C. 2006).

The factors relevant to a determination of "when to disregard the corporate form to allow recovery of unpaid pension contributions" are: "1) the amount of respect given to the separate identity of the corporation by its shareholders; 2) the fraudulent intent of the incorporators; and 3) the degree of injustice visited on the litigants by respecting the corporate entity." *Central States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 85 F.3d 1282, 1287 (7th Cir. 1996) (citing *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 461 (7th Cir. 1991)).

The "single employer" analysis may inform the alter-ego determination as well. *Trs. of Pension, Welfare & Vacation Fringe Benefit Funds of IBEW Local 701 v. Favia Elec. Co.*, 995 F.2d 785, 788 (7th Cir. 1993) (citing *Esmark, Inc. v. N.L.R.B.*, 887 F.2d 739, 754 (7th Cir. 1989)). Whether there exists a "single-employer" arrangement is determined by examining the following factors: "(1) interrelation of operations [between the two nominally separate entities], (2) common management, (3) centralized control of labor relations, and (4) common ownership." *Id.* (citing *inter alia S. Prairie Constr. Co. v. Int'l Union of Operating Eng'rs*, 425 U.S. 800, 803 (1976)).

"What is essential for the application of the alter ego doctrine, though, is a finding

of 'the existence of a disguised continuance of a former business entity or an attempt to avoid the obligations of a [CBA], such as through a sham transfer of assets.'" *Favia*, 995 F.2d at 789 (quoting *Int'l Union of Operating Eng'rs v. Centor Contractors*, 831 F.2d 1309, 1312 (7th Cir. 1987)). Whether the creation of the alleged alter ego was actuated by the employer's "unlawful motive or intent" is thus the "critical inquir[y] in an alter-ego analysis." *Central States*, 85 F.3d at 1288 (citing *Favia*, 995 F.2d at 789).]

In the case before us, the Trustee has plausibly alleged that DK&L was created by James Dodds to avoid DMCC's contractual obligations to the Union. In 2008, DMCC incurred a judgment against it in an amount exceeding $26,000. Am. Compl. ¶ 8. DMCC's response was to close its business. *Id.* After DMCC went out of business, James Dodds created two new entities, Dodds IN and Dodds KY. *Id.* ¶ 9. The Trustee focused his attention on Dodds KY, *id.* ¶ 10, and following the filing of that lawsuit, Dodds KY declared bankruptcy. *Id.* ¶ 11. Thereafter, DK&L was created. *Id.* ¶ 12. These allegations by the Trustee plausibly aver that "[t]he creation of the Defendants in this action by or on behalf of James Dodds evidences a continued pattern by James Dodds of conduct intended to evade the union agreement, prior judgment and obligations to [Trustee]." *Id.* ¶ 12.

Moreover, the Trustee's allegations plausibly aver that DMCC and DK&L are virtually one and the same company. James Dodds' role in both DMCC and DK&L includes control over the labor relations policies of both. *Id.* ¶ 7(a). DMCC and DK&L also "share common employees, equipment, materials and jobs" as well as "common management" and "common ownership." *Id.* ¶ 7(b)–(d). Based on these allegations,

despite nominal differences, DMCC and DK&L are virtually the same companies.

The complaint suffices to state a plausible claim to relief based on an alter ego theory.

## **Conclusion**

For the reasons above, DK&L's motion to dismiss is DENIED. The litigation shall proceed.

IT IS SO ORDERED.

Date: ___7/24/2019___

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Zachary Judson Eichel
EINTERZ & EINTERZ
zach@einterzlaw.com

Michael L. Einterz, Sr.
EINTERZ & EINTERZ
mike@einterzlaw.com

Donald D. Schwartz
ARNOLD & KADJAN
dds@aandklaw.com