UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHEN KNOWLES, et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:19-cv-00443-SEB-MPB |
| ) | |
| DODDS MASONRY CONSTRUCTON ) | |
| COMPANY, INC., et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANT DK&L MASONRY, LLC'S MOTION FOR SUMMARY JUDGMENT**

This cause is now before the Court on the Motion for Summary Judgment [Dkt. 61] filed by Defendant DK& L Masonry, LLC ("DK&L").[1] Plaintiffs Stephen Knowles, Trustee of the Bricklayers of Indiana Retirement Fund, Bricklayers and Trowel Trades International Fund, Bricklayers and Allied Craftworkers International Health Fund (as successor to Bricklayers of Indiana Health and Welfare Fund), Indiana Bricklayers Local 4 Joint Apprenticeship Training Committee and Louisville Pension Fund (collectively, "Plaintiffs" or "the Funds") have brought this lawsuit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") alleging that Defendant Dodds

---

[1] On January 3, 2020, Plaintiffs filed a Motion to Strike Extraneous Summary Judgment Averments [Dkt. 64], seeking to have stricken as extraneous to the issues presented on summary judgment portions of DK&L's evidentiary submissions addressing the alter ego factors as well as the final sentence in DK&L's statement of undisputed material facts which states that there is not common ownership between Dodds Masonry and DK&L. While such facts may have limited relevance to the narrow issue presented on summary judgment, considering the disfavor with which motions to strike are regarded in this jurisdiction, and the fact that none of the material that Plaintiffs seek to have stricken is scandalous or impertinent, we DENY Plaintiffs' Motion to Strike.

1

Masonry Construction Company, Inc. ("Dodds Masonry") violated its obligations under its collective bargaining agreement ("CBA") with Plaintiffs and that Defendants D and K Masonry, LLC ("D and K") and DK&L are successive alter egos of Dodds Masonry who share responsibility for its obligations under the CBA. DK&L has moved for summary judgment on the grounds that it owes no duty to Plaintiffs under the CBA because the CBA was effectively terminated by Dodds Masonry in 2010 and no continuing obligations exist. For the reasons detailed below, we <u>DENY</u> DK&L's Motion for Summary Judgment.

## Factual Background[2]

Bricklayers Local 4 is a statewide local union covering the entire state of Indiana and multiple counties in Kentucky. Champ Aff. ¶ 8. In July 1998, James Dodds, as owner of Defendant Dodds Masonry, an Indiana corporation engaged in the masonry and construction business, signed a Union memorandum of agreement ("MOA") with Bricklayers Local 4. *Id.* ¶¶ 9–10. The MOA bound Dodds Masonry to comply with the statewide CBA then in effect between Local 4 and the Indiana Mason Contractors Association and all successive CBAs unless or until terminated. Pursuant to the CBA, Dodds Masonry was required to pay specified wages and periodic contributions to the Funds on behalf of certain of its employees. *Id.* ¶ 11.

With regard to termination of the agreement, the CBA provided as follows:

---

[2] Both parties include in their briefing additional facts relevant to the issue of whether DK&L is an alter ego of Dodds Masonry. However, they agree that the sole issue on summary judgment is whether Dodds Masonry effectively terminated the CBA in 2010. Accordingly, we have confined our factual recitation to only those facts relevant to that question.

2

> This AGREEMENT shall be effective and binding upon the parties hereto from June 1, 2007 to May 31, 2010. This AGREEMENT shall be automatically renewed for additional periods of one (1) year each, from year to year, from after the original term that this AGREEMENT is in force, unless at least sixty (60) days prior to the expiration of the original term of this AGREEMENT or at least sixty (60) days prior to the expiration of any subsequent renewal thereof either the EMPLOYER or the UNION gives the other written notice of its intention to amend or modify this AGREEMENT.

CBA Art. XXVII at 32. According to DK&L, Dodds Masonry provided written notice to the Bricklayers' Union in a letter dated March 18, 2010 of its termination of the CBA, effective May 21, 2010. *See* Exh. 2 to O'Hara Aff. Dodds Masonry's attorney at the time, Mark O'Hara, avers that on that same day, March 18, 2010, more than sixty days prior to the expiration of the CBA, he hand-delivered a copy of the termination letter to the offices of the President of the Bricklayers Local 4, pursuant to the terms of the CBA. Dodds Aff. ¶ 5; O'Hara Aff. ¶ 7.

Following delivery of the termination letter, Dodds Masonry received no response from any Union representative confirming or rejecting the termination, causing Dodds Masonry to conclude that its CBA was terminated. Thereafter, it completed the jobs that were under contract at the time of the CBA termination notice and submitted all required payments to the Bricklayer's Local 4 through the first quarter of 2011, but it did not engage any Union members on any project it performed after that date.[3] Dodds Masonry went out of business in 2012 and the company was dissolved. Dodds Aff ¶ 8.

---

[3] According to Mr. Dodds, Dodds Masonry continued to make payments through the first quarter of 2011 because at some point in 2009 or 2010 representatives of Bricklayers Local 4, including Dave Collins and Stephen Crafton, informed Dodds Masonry that it was required to fulfill its obligation to the Union employees on its payroll who were working on any jobs under contract at the time that it intended to terminate the CBA. Dodds Aff. ¶ 5. However, Mr. Crafton denies

3

Bricklayers Local 4 denies having ever received Dodds Masonry's termination letter. Cathleen Cook, David Murray, and Ted Champ were all employed by the Union during the relevant time period, and, according to Plaintiffs, would have been the individuals to receive the termination letter if it had been delivered, but none of the three recalls personally receiving the letter or possessing any record of receipt of such notice.

Ms. Cook began working for Bricklayers Local 4 as an office clerical employee in 1999 and was serving in that same capacity in March 2010, when Mr. O'Hara represents that he hand-delivered the letter to the union office. Cook Aff. ¶ 3, ¶ 7. Her duties at that time included opening all mail addressed to the Union and directing it to the proper recipient. *Id.* ¶ 5. Ms. Cook was aware in March 2010 that Dodds Masonry had an agreement with the Union but does not recall receiving Dodds Masonry's termination letter nor does she remember anyone hand delivering a letter to the office on behalf of Dodds Masonry at any point in 2010. *Id.* ¶ 6, ¶¶ 8–9. She avers that, had someone hand-delivered a letter, she would have been the one to receive it as she was the only office clerical employee at the location. *Id.* ¶¶ 10–11. It was her practice to then forward such communications to the appropriate Union business agent and/or to the Union President, Mr. Champ. She states that she would not have retained a letter addressed to the Union without forwarding it in that manner. *Id.* ¶ 10, ¶ 12. On occasions when she was out of

---

ever saying this and Mr. Collins left Bricklayer Local 4's employ by 1999 and thus could not speak on behalf of Bricklayers Local 4. Crafton Aff. ¶ 20; Champ Supp. Aff. ¶¶ 5–6. Ted Champ, President of Bricklayer Local 4, avers that Bricklayers Local 4 has never taken the position that an employer is required to make contributions on ongoing jobs after it has terminated its CBA. Champ Supp. Aff. ¶ 7.

the office, Mr. Murray, Business Representative for Bricklayers Local 4, was responsible for processing the mail. *Id.* ¶ 11.

From 2009 to the present, Mr. Murray has served in the capacity of Business Representative for the union throughout the greater Indianapolis area working out of the Indianapolis office. Murphy Aff. ¶ 5. His duties in 2010 included monitoring bricklayers contractors who had union agreements with Bricklayers Local 4. He was aware at that time that Dodds Masonry had such an agreement and that it performed work in the Indianapolis area as well as in Kentucky. *Id.* ¶¶ 7–9. Mr. Murry spoke with Mr. Dodds on several occasions and Mr. Dodds never mentioned that he or anyone on his behalf had terminated the union agreement between Dodds Masonry and Bricklayers Local 4 or that Dodds Masonry was non-union. *Id.* ¶ 10, ¶ 13. Mr. Murray did not receive any correspondence from Ms. Cook, either in March 2010 or at any other point throughout that year, that dealt with Dodds Masonry. *Id.* ¶ 16. Bricklayer Local 4's standard procedure at the time was to immediately forward to Mr. Champ any letter purporting to terminate a CBA. Because Dodds Masonry was an Indianapolis-area based company, its termination letter would have come through the Indianapolis office and to Mr. Murray's attention, but Bricklayer Local 4's records do not reflect receipt of a 2010 letter of termination from Dodds Masonry. *Id.* ¶¶ 17–19.

Mr. Champ has served as President and Business Manager of the Bricklayers Local 4 since 2007. Champ Aff. ¶ 6. His duties include supervising all the representatives employed by the Union throughout Indiana and the areas of Kentucky within the Union's jurisdiction, monitoring problem union contractors, negotiating union

5

contracts, and servicing the membership. *Id.* ¶ 7. Throughout Mr. Champ's tenure as president, all union representatives and office personnel knew to notify him if one of the Union's signatory contractors sought to terminate its agreement with the Union. To his knowledge, each time a notice to terminate a company union agreement was received, the notice was forwarded to him. *Id.* ¶ 18. However, he has no record of receiving a copy of any correspondence from Dodds Masonry in 2010 alleging to terminate its union agreement nor was he advised by Ms. Cook or Mr. Murphy that Dodds Masonry had ever delivered such a letter. *Id.* ¶ 19, ¶ 23, ¶ 24.

Plaintiffs filed the instant action on January 28, 2019 and thereafter amended their complaint on March 20, 2019. Plaintiffs allege that Dodds Masonry violated its obligations under the CBA and that D and K and DK&L are successive alter egos of Dodds Masonry who share responsibility for its obligations under the CBA. DK&L now moves for summary judgment on grounds that there is no basis on which it can be held liable because the CBA was effectively terminated in 2010.

## Legal Analysis

I. **Summary Judgment Standard**

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A court must grant a motion for summary judgment if it appears that no reasonable trier of fact could find in favor of the nonmovant on the basis of the designated admissible evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). We neither weigh the evidence nor evaluate

the credibility of witnesses, *id.* at 255, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

## II.     Discussion

The only issue before us here on summary judgment is whether Dodds Masonry successfully terminated the CBA in March 2010. DK&L argues that the undisputed evidence establishes that Mr. O'Hara hand-delivered Dodds Masonry's written notice of termination to Bricklayers Local 4 more than 60 days before the renewal date thereby terminating the agreement in accordance with the relevant provisions of the CBA. In support of this claim, DK&L relies solely on the sworn testimony of Mr. O'Hara stating that he hand-delivered the termination notice to the Bricklayers Local 4 office on March 18, 2010.

However, a careful review of the March 18, 2010 notice of termination that DK&L has submitted in support of its motion for summary judgment discloses the lack of a date-stamp, a signature showing receipt of the notice by any Union representative, or any other indicia that the letter was actually received by Bricklayers Local 4.[4] "[T]he NLRB uniformly has held that *receipt* of a notice of termination by the nonterminating party within the notice period is required to prevent the automatic renewal of the

---

[4] DK&L has submitted an affidavit from Mr. Collins, a former employee of Bricklayers Local 4, stating that he had a conversation with Mr. Dodds in 2010 regarding his intention to terminate the CBA and subsequently "confirmed" that Dodds Masonry terminated the CBA. Collins Aff. ¶¶ 2–4. However, Mr. Collins provides no further details as to the nature of such confirmation or how he was in a position to confirm termination of the CBA when he had left Bricklayer Local 4's employ over ten years earlier.

7

contract." *Illinois Dist. Council No. 1 v. R&R Masonry, Inc.*, No. 94 C 7377, 1996 WL 627635, at *6 (N.D. Ill. Oct. 28, 1996) (collecting cases) (emphasis in original); *accord N.L.R.B. v. Vapor Recovery Sys. Co.*, 311 F.2d 782, 785 (9th Cir. 1962) ("Where the giving of written notice is required by statute or contract … the notice is effective when received."). DK&L has not presented any case law or provided any developed argument that suggests that this requirement excludes termination notices that are hand-delivered as opposed to mailed.

Plaintiffs, in response, have presented evidence sufficient to raise a genuine issue of material fact regarding whether the termination letter was actually delivered to and received by the Union. Specifically, they have submitted affidavits from Ms. Cook, Mr. Murphy, and Mr. Champ averring that, first, no agent of the Union has any recollection nor does the Union possess any record of receipt for Dodds Masonry's termination notice; second, that the Union had in effect a standard procedure of forwarding termination notices to Mr. Champ that, had the termination notice been hand-delivered on March 18, 2010, would have been followed; third, that the Union never remitted to Dodds Masonry a written acceptance or rejection of its termination or otherwise responded to the notice; and fourth, that Dodds Masonry continued to provide contributions for several months following its purported termination of the CBA. Viewing this evidence in the light most favorable to Plaintiffs, as we are required to do on summary judgment, there clearly exists genuine issues of material fact relating to whether Dodds Masonry effectively terminated the CBA in 2010.

DK&L has failed to adduce evidence to supplement or corroborate Mr. O'Hara's testimony that would go towards conclusively establishing that the Union in fact received the March 18, 2010 termination letter (i.e., such as testimony from a union employee that the notice was received or some other record of receipt).  Whether the CBA was terminated in compliance with the CBA is a core dispute between the parties, the resolution of which will require credibility determinations that must be made only by a jury.  Accordingly, DK&L's motion for summary judgment is unavailing.

### III. Conclusion

For the foregoing reasons, Defendant DK&L's Motion for Summary Judgment [Dkt. 61] is <u>DENIED</u>.  Plaintiffs' Motion to Strike [Dkt. 64] is also <u>DENIED</u>.  The case shall proceed accordingly.

IT IS SO ORDERED.

Date: _____6/8/2020_____            _____
                                                                                                                 SARAH EVANS BARKER, JUDGE
                                                                                                                 United States District Court
                                                                                                                 Southern District of Indiana

Distribution:

Zachary Judson Eichel
EINTERZ & EINTERZ
zach@einterzlaw.com

Michael L. Einterz, Sr.
EINTERZ & EINTERZ
mike@einterzlaw.com

Brian C. James
ARNOLD & KADJAN
bjames@aandklaw.com

Grant R. Piechocinski
ARNOLD & KADJAN
gp@aandklaw.com

Donald D. Schwartz
ARNOLD & KADJAN
dds@aandklaw.com